**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | |
|---|---|
| Thomas Regan and Patti Regan, )<br>as Surviving Parents of Marlowe A. )<br>Regan, Deceased, )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>Nissan North American, Inc., )<br>)<br>Defendant. ) | **MEMORANDUM OPINION RE<br>MOTION TO COMPEL**<br><br><br><br>Case No.  1:08-cv-034 |

## I.     BACKGROUND

This is a wrongful death action brought against Nissan North American, Inc. ("Nissan") for the death of plaintiffs' daughter when the 1994 Nissan Pathfinder she was driving was involved in a roll-over accident. According to Nissan, the 1994 Nissan Pathfinder was part of a series of Pathfinder vehicles referred to internally by Nissan as the WD21 Pathfinder. Nissan states that the WD21 series was introduced in the Fall of 1986 for the 1987 model year and was discontinued following the 1995 model year.

Nissan states that a new Pathfinder series, the R50, was introduced beginning with the 1996 model year. Nissan claims the R50 was designed as an entirely new vehicle ("full model change") from the ground up, and was not simply a modification of the WD21 series. Nissan supports these contentions with an affidavit from one of Nissan's design engineers explaining these points as well as the differences between the WD21 and R50 Pathfinders.

Before the court now is plaintiff's motion to compel discovery. On December 5, 2008, the court held a telephonic hearing on the motion during which the court discussed with parties its views

1

on the scope of discovery without making a ruling as to any of the specific discovery request. Because the parties indicated they may be able to work out their differences based on the court's guidance, the court will set forth below the court's rulings generally with respect to the scope of discovery and will defer any final ruling with respect to the motion compel to see whether more specific rulings are required.

**II.   DISCUSSION**

Some of plaintiffs' discovery requests can literally be construed as requiring Nissan to produce virtually every piece of paper or document relating to Nissan Pathfinders. These requests are overbroad. During the hearing, plaintiffs' counsel agreed that its document requests can be limited to the following components and issues:

1. seatbelts,

2. driver's seat,

3. doors and door latch systems,

4. roof,

5. occupant protection in interior impact (inertia impact protection),

6. handling & stability, and

7. occupant retention system (defined as being those components that are designed to keep occupants within the vehicle in the event of crash or rollover).

Nissan agrees that these are the components and systems at issue, but argues that "occupant retention" is too vague a term. The court believes, however, that this term as defined above provides sufficient guidance for the production of documents.

Also, depending upon the particular item 1-7, Nissan wants to further limit discovery to only certain model years of the Pathfinder WD 21 because of component-part changes or modifications. For example, with respect to the door and door latch systems, Nissan seeks to limit discovery to the 1990-1995 model years because, according to Nissan, these are the only models years for which the doors and door latch systems were the same as the plaintiffs' daughter's vehicle. For discovery of other component parts, Nissan proposes different model years that vary depending upon the component part. Nissan's argument is that it is only required to produce documents with respect to components that were substantially the same as in the plaintiffs' vehicle and that the plaintiffs have not satisfied what Nissan characterizes as their burden to prove similarity beyond that declared by Nissan.

The case law, however, does not support Nissan's argument that the plaintiffs are required to make a showing of similarity on a component-by-component basis for the *same model* of vehicle as involved in the accident, in contrast to what might be their burden when seeking discovery with respect to different models. See, e.g., Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380-382 (8th Cir. 1992) (noting that discovery with respect to the same or similar models is generally permitted and concluding that the plaintiff had failed to demonstrate the relevancy of discovery with respect to F and W model trucks in an accident involving an MH model for which there was full discovery); Gibson v. Ford Motor Company, 510 F. Supp.2d 1116, 1119-1121 & n. 7 (N.D. Ga. 2007) (requiring some showing by plaintiff for discovery with respect to an F-150 light-duty pickup in a roof-crush case when the accident involved an F-350 heavy duty pickup, but noting that the defendant had produced discovery for the F250 and greater series of heavy duty pickups); O'Connor v. Am General Corporation, 1992 W.L. 382366, *2-4 (E.D. Penn. 1992); Bowman v. General Motors

Corporation, 64 F.R.D. 62, 67-68 (E.D. Penn. 1974).  If anything, once plaintiffs' discovery is focused upon the same model of vehicle involved in the accident, the burden shifts to Nissan to demonstrate that a particular model year is so completely different for the same series of vehicles that the scope of discovery should be restricted.  See id.  But, regardless of who has the burden, the court believes that discovery should be permitted for all of the model years for the WD21 Pathfinder, along with any prototypes for the WD21,  based upon Nissan's identification and definition of the WD21 series, the nature of the plaintiffs' claims, and  the specific components at issue.

Nissan also argues that discovery with respect to the WD21 series should be limited to those cars sold in the United States based solely upon its declaration that vehicles sold in the United States are subject to different governmental safety standards.  While it may be true that the Federal Motor Vehicle Safety Standards are more stringent than the standards of other countries as a general matter, Nissan has not demonstrated that this is universally true in all instances.  And, if Nissan tested and manufactured Pathfinders to meet more stringent standards elsewhere, the fact that it did so may be relevant to issues of notice of potential dangers and the feasibility of other designs.

Moreover, Nissan has not identified how the Nissan WD21 Pathfinders sold in other countries actually differ from those sold in the United States.  For all the court knows at this point the differences may have little to do with this lawsuit and that, for purposes of the components at issue in this case,  the vehicles are for the most part the same.  And, to the extent this is true, then the relevancy of the discovery with respect to cars marketed for sale in foreign countries  would seem be the same as for those sold in the United States - at least with respect to many of the discovery requests.

Finally, there is a dispute regarding the extent to which discovery should be permitted with respect to the R50 series Pathfinder. Here Nissan has made some showing that this series of Pathfinders is different from the WD21 series. As consequence, Nissan has a better argument under the cases cited above that the court should more carefully scrutinize any discovery requests related to this series of vehicles.

This is not to say, however, that no discovery should be permitted with respect to the R50 Pathfinder. It appears the R50 was designed and marketed as the replacement for the WD21 Pathfinder and this fact alone may make some discovery relevant without any further showing by the plaintiffs. For example, one of the claims in this case appears to be that the Pathfinder in question was unreasonably dangerous and defective because it did not sufficiently protect occupants from being thrown from the vehicle in a rollover situation - particularly given its alleged propensity for rolling over. If providing better protection for the occupant and/or lessening the instances of rollovers were motivating factors in Nissan redesigning the Pathfinder from the "ground up," then, arguably, some discovery with respect to these issues should be permitted, particularly if the R50 documents related to items 1-7 make reference to the WD21 or the prior design of the Pathfinder, since the new design predated the accident and, perhaps also, the manufacture of the particular vehicle involved in the accident.[1] See, e.g., Bowman v. General Motors Corporation, supra. There may be other possibilities of permissible discovery as to the R50, some which may require a further showing by the plaintiffs, but some of which may not given the fact the R50 appears to be a replacement vehicle of the same general type as the WD21.

---

[1] The affidavit filed by Nissan indicates that the development of the R50 began in 1992.

In other words, the discovery issues with respect to the R50 are not same if plaintiffs' were seeking discovery with respect to the Nissan Maxima, for example, which the court would believe to be an entirely different type of vehicle, and for which the plaintiffs would have to make a showing of substantial similarity with respect to any discovery on a component-level basis.  And, as the Eighth Circuit noted in Hofer,

Plaintiffs' counsel stated during the hearing that the discovery plaintiffs seeks with respect to the  R50 is more limited than the discovery sought with respect to the WD21.  To sharpen the focus of any disputes that may remain, the court will require the plaintiffs to serve new discovery requests upon Nissan for the R50 discovery being sought  that incorporates these limitations.  And, if the parties are unable to resolve the scope of discovery with respect to the R50 based upon these requests, the parties will have to contact the court for further rulings.

### III.    CONCLUSION

The foregoing is the court's holdings with respect to the scope of discovery generally without ruling on any specific discovery request.  The court will hold in abeyance plaintiffs' motion to compel (Doc. No. 61) to see if the parties can resolve their disputes with respect to the particular discover requests.

Dated this 8th day of December, 2008.

>                             */s/  Charles S.  Miller, Jr.*
>                             Charles S.  Miller, Jr.
>                             United States Magistrate Judge